**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM DIVISION**

GENERAL FIDELITY INSURANCE CO.,

        Plaintiff,

vs.

KATHERINE L. FOSTER, an individual; NORTHSTAR HOLDINGS, INC., a Florida corporation; NORTHSTAR HOMES, INC., A Florida corporation; and NORTHSTAR HOLDINGS, AT B & A, LLC, a Florida corporation,

        Defendants.
_____/

CASE NO.: 09-80743
JUDGE: K. Michael Moore
MAGISTRATE: Judge Andrea M. Simonton

## PLAINTIFF GENERAL FIDELITY INSURANCE COMPANY'S RESPONSE TO DEFENDANT KATHERINE L. FOSTER'S MOTION FOR EXTENSION OF TIME AND TO STAY RESPONSE DEADLINE TO GENERAL FIDELITY'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, General Fidelity Insurance Company ("General Fidelity"), by and through undersigned counsel and pursuant to Local Rule of the Southern District of Florida 7.1, hereby responds to Defendant Katherine L. Foster's ("Foster") Motion for Extension of Time and to Stay Response Deadline to File a Response to General Fidelity's Motion for Summary Judgment.

### I.    Introduction

With this Court on the verge of addressing the purely legal issues raised in General Fidelity's Motion for Summary Judgment, Foster now wishes to amend her underlying complaint—a complaint that was filed over 15 months ago. Because Foster failed to attach her proposed amended complaint, this Court and the parties are left with only Foster's conclusory statements as to how Foster's amended complaint might affect this case,

assuming the amended complaint is even allowed. However, Foster's lone basis for amendment, "new scientific research," illustrates why an amendment would be futile with respect to this insurance coverage case, as research confirms that the damages caused by Chinese drywall releases fall under the Policies' Total Pollution Exclusion. For these reasons and those more fully discussed below, General Fidelity respectfully requests that this Court deny Foster's latest attempt to delay a resolution of this case.[1]

## II. Analysis

Foster's present complaint against Northstar Holdings, Inc., Northstar Homes, Inc., and Northstar Holdings, at B & A, LLC ("Northstar") alleges that Foster has suffered damages as a result of the harmful effects of sulfide gases and other chemicals released by Chinese drywall. These allegations clearly trigger the Total Pollution Exclusion in Northstar's commercial general liability policies issued by General Fidelity. Accordingly, General Fidelity has no duty to defend nor a duty to indemnify Northstar based upon damages sustained due to the harmful effects of sulfide gases and other chemicals released by Chinese drywall.

Foster may be seeking to amend the underlying complaint to delete or modify such allegations in order to ostensibly create a defense obligation. Such creative pleading, however, will not affect General Fidelity's duty to defend Northstar because, under such circumstances, this Court will not be confined to only the (less specific) allegations in Foster's amended complaint.

---

[1] Foster's motion for an extension of time is the third such motion in the past six months. See Foster's Unopposed Motion for Extension of Time, dated 7/6/10 (Doc. # 45); Foster's Unopposed Motion for Extension of Time, dated 2/2/10 (Doc. # 27).

A.  Applicable law

As a general rule, an insurer's duty to defend under Florida law depends upon the allegations in the underlying complaint. *See, e.g., Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Assoc., Inc.*, 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009); *Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006); *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 9-10 (Fla. 2004). However, Florida courts have recognized an equitable exception to this general rule when the underlying complaint omits an uncontroverted fact that, if pled, would place the claim outside the scope of coverage. *See, e.g, Sinni v. Scottsdale Ins. Co.*, 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2009) (going outside the allegations of the underlying complaint and finding that the insurer had no duty to defend ); *Underwriters at Lloyds London v. STD Enterprises, Inc.*, 395 F. Supp. 2d 1142, 1150 (M.D. Fla. 2005) (same); *Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So. 2d 1101, 1103 (Fla. Ct. App. 1995) (same); *Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026, 1027 (Fla. Ct. App. 1989) (same; "The insurer is not obligated to provide a defense for a stranger merely because the plaintiff alleges that the defendant is an insured or alleges facts which, if true, would make the defendant an insured. The mere allegations of the plaintiff's petition may not create an obligation on the part of the insurer to defend where no such obligation previously existed.").

This Court has applied this equitable exception to the general rule that the allegations of the complaint govern an insurer's duty to defend. In *Wilson ex rel. Estate of Wilson v. General Tavern Corp.*, 469 F. Supp. 2d 1214 (S.D. Fla. 2006), this Court rejected a litigant's attempt to manipulate the pleadings in order to trigger insurance

3

coverage. The plaintiff, Wilson, was attempting to recover insurance funds for damages arising out of an automobile accident from an individual who was not an insured. *Id.* at 1220. Wilson argued that matters not contained within the Fourth Amended Complaint were irrelevant and should not be considered by the Court. *Id.* This Court rejected Wilson's contention; instead, the Court reviewed both the record and the operative complaint in the underlying action and found that "the operative complaint omitted that crucial, undisputed fact in a patent attempt to 'plead into coverage.'" *Id.* This Court further stated:

> If the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend. Thus, working alone in a pleading does not create a duty to defend *regardless of its artfulness*. The allegations within the complaint must state a cause of action that seeks recovery for the type of damages covered by the insurance policy in question. The right to an early resolution of a coverage issue should turn on the merits . . . on whether a policy exclusion applies and *not on creative pleading*.

*Id.*(quoting *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 35-36 (Fla. Ct. App. 2003)) (emphasis in original). This Court ultimately found that the insurer had no duty to defend, despite Wilson's creative efforts to plead into coverage. *Id.* at 1220-21.

B. <u>The Total Pollution Exclusion applies to the allegations in the underlying complaint</u>

In the instant case, General Fidelity does not have a duty to defend Northstar under the facts alleged in the underlying complaint because of the Policies' Total Pollution Exclusion, along with other exclusions.

The Total Pollution Exclusion precludes coverage for damages arising out of "the actual, alleged or threatened discharge, dispersal, seepage, migration, *release* or escape of 'pollutants' at any time." (Emphasis added). The Total Pollution Exclusion defines

4

"pollutant" as "any . . . *gaseous*, . . . , *irritant or contaminant*." (Emphasis added). The Total Pollution Exclusion also offers specific types of substances that can constitute an "irritant" or "contaminant," such as " *vapor*, . . . , *fumes*, . . . , *chemicals* . . . ." (Emphasis added).

Foster's underlying complaint alleges that homes and bodies were "exposed to Defendants' drywall and the *corrosive and harmful effects* of the *sulfide gases and other chemicals* being *released* from these proven *hazardous substances*." Foster Compl. at ¶ 98 (emphasis added). Further, the underlying complaint alleges that the drywall releases caused "medical ailments, including allergic reactions, coughing, sinus and throat infection, eye irritation, breathing disorders, other health problems, and/or significantly increased the risk of contracting a serious latent disease." Foster Compl. at ¶ 97. The underlying complaint also alleges that the drywall released hydrogen sulfide, which "is considered a broad-spectrum *poison*, meaning that it can poison several different systems in the body, although the nervous system is most affected." Foster Compl. at ¶ 93 (emphasis added). The underlying complaint further alleges that the drywall emitted "various sulfide *gases* and/or other *chemicals* through '*off-gasing*' that created noxious, 'rotten egg-like' *odors*." Foster Compl. at ¶ 2 (emphasis added).

As more fully discussed in General Fidelity's Motion for Summary Judgment, these allegations trigger the Total Pollution Exclusion.

C.  <u>Foster cannot avoid the true facts of this case</u>

Foster now alleges that an amendment to her underlying complaint is necessary because of the availability of new scientific research. Foster does not identify this new

scientific research. However, this lone basis with regard to the *effects* of Chinese drywall does not appear to implicate the mechanism and results of the *release*. Accordingly, this new scientific research is consistent with the facts alleged in Foster's current complaint, which triggers the Total Pollution Exclusion.[2]

In her Motion, Foster refers to the MDL proceeding, *In Re: Chinese Manufactured Drywall Products Liaiblity Action*, United States District Court for the Eastern District of Louisiana, Case No. 2:09-md-02047-EEF. In the MDL proceeding, Judge Fallon has made significant scientific findings relating to Chinese drywall releases in two bellwether trials:

> To understand the scope of the problem caused by the drywall in this case it is helpful to review the characteristics of this Chinese drywall and explore the reason it has caused problems in the Hernandez home. This Chinese drywall is different from typical benign drywall for the following reasons: it has a significantly higher average concentration of strontium and more detectable levels of elemental sulfur, and *it releases odious sulfur gases which are corrosive to metals, particularly copper and silver.*
>
> . . .
>
> *Corrosion was documented throughout the Hernandez home on copper and silver components. The evidence is conclusive that the corrosion in the Hernandez home was proximately caused by exposure to Chinese drywall manufactured and sold by the Defendant.*
>
> *When copper is corroded by the reduced sulfur gases released by the Chinese drywall, copper sulfide is produced.* The copper sulfide produces a black film on the surface of the copper. Copper sulfide corrosion is particularly aggressive in humid and moist environments. Silver is used in

---

[2] General Fidelity also opposes Foster's motion because there is no assurance that Foster's amended complaint will be allowed in the MDL litigation. Further, even if Foster's amended complaint is allowed, it is unclear how long this process might take. Thus, this case might be significantly delayed, again, if Foster is allowed an extension of time to attempt to file an amended complaint in the MDL litigation. As explained in this Response, because the facts with respect to the release of "pollutants" by Chinese drywall are identical to the Foster complaint, this Court is able to rule on General Fidelity's pending Summary Judgement Motion.

6

electrical contacts for practically every device that carries electrical current. For example, silver is present in circuit breakers, light switches, thermostats, computers, televisions, and, generally, any device with a switch. *The sulfur-induced corrosion of silver produces silver sulfides.* "By the time relevant corrosion [on copper and silver components] can be detected visually, the equipment may already be in an advanced stage of degradation."

. . .

Upon considering the arguments of the parties, the Court finds that the science is not sufficiently developed to allow a certain conclusion as to whether the presence of copper sulfide alone results in continued corrosion. However, at this time and in this case, the evidence presented by the Plaintiffs supports the conclusion that there is a substantial risk that the corrosion may continue in the Hernandez home even after the Chinese drywall is removed. Furthermore, *there is no dispute that there is corrosion on the exposed portions of the wires. There is also evidence to indicate that sulfur gases can infiltrate the insulation and corrode portions of the wire under the insulation.* In fact portions of the wiring under the insulation show evidence of corrosion. Finally, there is evidence to indicate that the corrosion which is present can interfere with the performance and longevity of the wire. This can increase the risks of failure and also create safety hazards. Thus whether or not the corrosion will increase is irrelevant in this case. The current state of the wire corrosion creates sufficient risks to require appropriate action. Accordingly, the Court finds that it is prudent to consider this risk in formulating its remediation protocol for the Hernandez home.

*Hernandez v. Knauf Gips KG, et al.*, case no. 09-6050 (E. D. La. April 27, 2010), Findings of Fact & Conclusions of Law at 15-19 (internal citations omitted) (emphasis added), attached as Exhibit A.

Additionally, Judge Fallon made these critical scientific findings:

3. The sulfur gases released by Chinese drywall are irritating to the human body. Exposed individuals reported irritation of the eyes, respiratory system, and skin, among other things.

4. The sulfur gases released by Chinese drywall cause offending odors in homes, making them hard if not impossible to live in.

7

    5.    The sulfur gases released by Chinese drywall are corrosive to metals, particularly copper and silver

    6.    The corrosion on metals caused by the sulfur gases emitted by Chinese drywall causes premature failure of electrical & mechanical devices.

*Germano, et al. v. Taishan Gypsum Co. Ltd., et al.*, case no. 09-6687 (E. D. La. April 8, 2010), Findings of Fact & Conclusions of Law at 12-17 (internal citations omitted), attached as Exhibit B.[3]

These scientific findings made by Judge Fallon in the MDL on Chinese drywall litigation confirm that the gases released by Chinese drywall are "pollutants" that cause property damage and bodily injuries. Because these facts (which are presently alleged in the Foster Complaint) trigger the Total Pollution Exclusion, General Fidelity has no duty to defend Northstar in the underlying lawsuit, regardless of the deletions or modifications Foster may make to the allegations in her amended complaint. *See Wilson*, 469 F. Supp. 2d at 1220.

### III.   <u>Conclusion</u>

The facts with respect to the release of "pollutants" by Chinese drywall are identical to the allegations of the Foster Complaint. These facts, as presently alleged, trigger the Total Pollution Exclusion. Pursuant to *Wilson* and other similar cases, this Court should consider facts of the case when a litigant engages in creative pleading that proposes to delete or modify previously alleged facts in order to plead into coverage. Therefore, General Fidelity respectfully submits that this Court should deny Foster's motion to

---

[3] Judge Fallon's findings of fact in *Germano* and *Hernandez* are consistent with the facts alleged in Foster's current complaint.

stay/motion for an extension of time and proceed to address the purely legal issues raised in General Fidelity's Motion for Summary Judgment.

Dated: July 23, 2010

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

s/ RYAN K. HILTON, ESQ.
R. STEVEN RAWLS, ESQ.
Florida Bar No.: 938254
rrawls@butlerpappas.com
RYAN K. HILTON, ESQ.
Florida Bar No.: 304610
rhilton@butlerpappas.com
ROBERT J. WITMEYER, ESQ.
Florida Bar No.: 10249
rwitmeyer@butlerpappas.com
777 S. Harbour Island Boulevard
Suite 500
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
Attorneys for Plaintiff, General Fidelity Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

s/ Ryan K. Hilton
RYAN K. HILTON, ESQ.

## SERVICE LIST

**GENERAL FIDELITY INSURANCE COMPANY v. KATHERINE L. FOSTER, an individual; NORTHSTAR HOLDINGS, INC., a Florida corporation; NORTHSTAR HOMES, INC., a Florida corporation; and NORTHSTAR HOLDINGS AT B & A, LLC, a Florida corporation**

### Case No.: 09-80743-Civ-MOORE

### United States District Court, Southern District of Florida

MICHAEL K. WILSON, P.A.
mkwilson@broadandcassel.com
BROAD AND CASSEL
390 N. Orange Avenue
Orlando, FL 32801
Telephone: (407) 839-4200
Facsimile: (407) 425-8377
Attorney for Defendants,
Northstar Holdings, Inc.,
Northstar Homes, Inc., and
Northstar Holdings at B & A, LLC


JEREMY W. ALTERS, ESQ.
Jeremy@abbrclaw.com
ALTERS BOLDT BROWN RUSH CULMO, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, FL 33137
Telephone: (305) 571-8550
Facsimile: (305) 571-8558
Attorneys for Defendant,
Katherine L. Foster