IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80743-CIV-MOORE/SIMONTON

GENERAL FIDELITY INSURANCE
COMPANY,

    Plaintiff,

vs.

KATHERINE L. FOSTER, et al.,

    Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiff General Fidelity Insurance Company's Motion for Summary Judgment (ECF No. 37). Defendants Northstar Holdings, Inc. ("Northstar Holdings"), Northstar Homes, Inc. ("Northstar Homes"), and Northstar Holdings at B & A, LLC ("Northstar B & A") (collectively the "Northstar Defendants") filed a Response (ECF No. 67). Defendant Katherine Foster ("Foster") also filed a Response (ECF No. 68). Plaintiff filed a Reply to Northstar Defendants (ECF No. 71) and a Reply to Defendant Foster (ECF No. 72).

UPON CONSIDERATION of the Motion, the Responses, the Replies, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

**I.    BACKGROUND**

This is a declaratory judgment action to determine insurance coverage for personal injury and property damage allegedly resulting from the use of defective Chinese drywall. Plaintiff General Fidelity Insurance Co. ("General Fidelity") seeks a declaration that three commercial

general liability policies it issued to the Northstar Defendants do not cover the personal injury or property damage alleged in the underlying lawsuit currently pending as part of a Multidistrict Litigation action in the Eastern District of Louisiana ("Underlying Action"). In the Underlying Action, Defendant Katherine L. Foster ("Foster") alleges that she suffered personal injury and property damage because the drywall used by Northstar Defendants to build her home was defective.

A. Underlying Action

On April 3, 2009, Foster filed the Underlying Action in the Southern District of Florida, Katherine L. Foster, et al. v. Northstar Holdings, Inc., et al., Case No. 09-80535-CIV-MOORE (S.D. Fla. Apr. 3, 2009), against the Northstar Defendants, alleging that they built her home in Boynton Beach, Florida, using defective Chinese drywall. Foster alleged that the defective drywall emitted various sulfide gases "and/or other chemical through 'off-gassing' that created noxious, 'rotten egg-like' odors, causing bodily injury and property damage." Complaint ¶ 17, Katherine L. Foster, et al. v. Northstar Holdings, Inc., et al., Case No. 09-80535-CIV-MOORE (S.D. Fla. Apr. 3, 2009) (ECF No. 1). Foster alleged that the Northstar Defendants were negligent and breached their duty to exercise reasonable care in the supply, inspection, selling, and installation of the defective Chinese drywall, as well as their duty to warn of its harmful effects. The Underlying Action was transferred by the Judicial Panel on Multi-District Litigation (the "JPML") to the Eastern District of Louisiana and was consolidated with MDL-2047, In re Chinese-Manufactured Drywall Prod. Liab. Litig. ("MDL Action"). Conditional Transfer Order, Katherine L. Foster, et al. v. Northstar Holdings, Inc., et al., Case No. 09-80535-CIV-MOORE (S.D. Fla. Apr. 3, 2009) (ECF No. 18).

On November 18, 2010, Foster filed a motion to amend her complaint in the Underlying Action. Mot. to Am. Compl. (ECF 68-3). Judge Fallon granted the motion on November 22, 2010. Order Granting Mot. to Am. Compl. (ECF 68-4). The facts in the Amended Complaint[1] do not materially differ from the Original Complaint. In the Amended Complaint, Foster alleges that the defective drywall contains "excessive amounts of elemental sulfur and strontium and as a result causes damage and corrosion . . . to home structure and mechanical systems." Am. Compl. ¶ 5 (ECF No. 68-3), at 6. She also alleges that the excess sulfur causes a "'rotten egg' smell. . . which is capable of . . . causing health problems." Id. The Underlying Action, now based on this Amended Complaint, is still pending.

B.  Current Dispute

General Fidelity issued three commercial general liability policies (the "Policies") to the Northstar Defendants. The first policy was issued to Northstar Holdings and Northstar B & A, with effective dates of coverage from October 22, 2006, to October 22, 2007. Policy Number BAG0002215-00 (ECF No. 29). The second policy was issued to Northstar Homes and Northstar B & A, with effective dates of coverage from October 22, 2007, to October 22, 2008. Policy Number BAG0004973-00 (ECF No. 30). The third policy was issued to Northstar Holdings and Northstar B & A, with effective dates of October 22, 2008, to October 22, 2009. Policy Number BAG0006227-00 (ECF No. 31).

The policies each have an "Insuring Agreement" that states: "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or

---

[1] "Amended Complaint" will only refer to the Amended Complaint in the Underlying Action.

3

'property damage' to which this insurance applies." Policy Number BAG0002215-00, Form CG 00 01 12 04, at 21. It further states: "we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." Id.

Each policy contains an identical provision called the "Florida Total Pollution Exclusion Endorsement," which amends the general insuring agreement to create an exclusion. It provides as follows:

> This endorsement modifies insurance provided under the following:
>
> **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
>
> I. For purposes of this endorsement only, exclusion f. under paragraph 2., Exclusions of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced by the following:
>
> This insurance does not apply to:
>
> **f. Pollution**
>
>> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
>>
>> (2) Any loss, cost or expense arising out of any:
>>
>>> (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or
>>>
>>> (b) Claim or "suit" by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."
>
> II. For purposes of this endorsement only, definition 15 of SECTION V -

DEFINITIONS is deleted and replaced by the following:

> 15. "Pollutants" mean any solid, liquid, gaseous, thermal, acoustic, electric, magnetic or electromagnetic irritant or contaminant. "Pollutants" include, but are not limited to, smoke, vapor, soot, dusts, fumes, fibers, radiation, acid(s), alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms and conditions of this policy remain unchanged.

Florida Total Pollution Exclusion Endorsement ("Pollution Exclusion") (Form BOA-TPE-001-FL) (ECF No. 29), at 62.

On February 24, 2010, General Fidelity filed its Motion for Summary Judgment (ECF No. 37).[2] General Fidelity claims that it has no duty to defend the action against the Northstar Defendants because the injuries and damage from the Chinese drywall fall under its policies' Pollution Exclusion. Defendants argue that the excessive amounts of elemental sulfur and strontium that comprise the gypsum drywall, are not "pollutants" and therefore General Fidelity must defend the action and eventually indemnify Northstar.[3] This Court finds that the compounds released by the elemental sulfur and strontium are pollutants within the meaning of the policy and the Pollution Exclusion does apply.

## II. STANDARD OF REVIEW

The applicable standard for reviewing a summary judgment motion is stated in Rule 56(c)

---

[2] The Procedural History of this case was detailed in this Court's Order Denying Motion to Dismiss or Stay (ECF No. 61), dated September 10, 2010, and for the sake of brevity will not be repeated here.

[3] Defendant Northstar also avers that because Plainitff's Motion for Summary Judgment was filed based on the Original Complaint, the Court cannot consider this Motion because it must be based on the Amended Complaint. The Amended Complaint does not factually differ from the Original Complaint. The issues have been fully briefed and the Court bases this Order on the claims in the Amended Complaint.

of the Federal Rules of Civil Procedure:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. However, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

III. ANALYSIS

    A. Applicable State Law

This Court has diversity jurisdiction over the present action and therefore must apply

Florida's choice of law rules to determine which state's law to apply. LaFarge Corp. v. Travelers Indem., 118 F.3d 1511, 1515 (11th Cir. 1997). In the context of insurance contracts, Florida applies the *lex loci contractus* rule, unless a statute modifies or abrogates a choice-of-law rule. Nova Cas. Co. v. Waserstein, 424 F. Supp. 2d 1325, 1331 (S.D. Fla. 2006). Under this rule, the law of the jurisdiction where the contract was executed governs. Id. The policies were executed and delivered in Florida and the Parties agree that Florida law applies.

B.   Duty to Defend and the Pollution Exclusion [4]

General Fidelity asserts that it does not have a duty to defend because the compounds and sulfide gases being released from the defective drywall qualify as "pollutants" and the damages and injury caused are excluded from coverage by the Pollution Exclusion. "The duty to defend depends solely on the facts and legal theories alleged in the pleadings and claims against the insured." Lawyers Title Ins. Corp. v. JDC (America) Corp., 52 F.3d 1575, 1580 (11th Cir. 1995). Therefore, the Court must look at Foster's Amended Complaint in the Underlying Action as compared with the insurance policies to determine General Fidelity's duty to defend. Here, the crux of the dispute is whether the excessive elements sulfur and strontium[5] comprising the

---

[4] Defendant Foster argues that there is an exception to the Pollution Exclusion in the policy that applies to building materials, such as the defective drywall. That argument is based on an erroneous reading of the policy. The Pollution Exclusion deleted the paragraph containing the exception to which Foster refers. There is no such exception in the policies at issue, thus, the Court will not address that argument further.

[5] Foster amended her complaint in the underlying action to eliminate any reference to "sulfide gas" or "chemicals being released" from the defective drywall. The Court necessarily infers from the Amended Complaint that the makeup of the defective gypsum emitted some sort of compound, comprised of the excessive sulfur and strontium, responsible for the damaging and injurious effects. The Court will use the term "excessive sulfur and strontium" to remain consistent with terms in the Amended Complaint; however, the Court recognizes the sulfur and strontium compounds and gases released from the drywall as the actual "pollutants."

defective gypsum drywall are "pollutants" as defined by the policy.

Defendant Foster argues that the naturally occurring elements strontium and sulfur are not pollutants. The policy defines pollutants as "any solid, liquid, gaseous, thermal, acoustic, electric, magnetic or electromagnetic irritant or contaminant." Pollution Exclusion. The policy does not define "irritant" or "contaminant." Id. When policies do not define a term, courts may look to alternate sources such as the dictionary to give the words their plain meaning. Universal Underwriters Ins. Co. v. Evans, 565 So. 2d 741, 742 (Fla. Dist. Ct. App. 1990). As succinctly stated in Defendant Foster's Response:

> Webster's Dictionary defines "irritant" as "something that irritates or excites." MERRIAM WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 1197 (1993). "Irritate" is defined as "roughened, reddened, or inflamed." Id. "Contaminant" is defined as "something that contaminates" and "contaminate" means "to soil, stain, corrupt, or infect by contact or association" or "make inferior or impure by mixture." Id. at 491.

Foster Resp. in Opp. (ECF No. 68), at 10-11.

The Amended Complaint states that the presence of the excessive amounts of sulfur and strontium cause "damage and corrosion" including the "pitting and/or tarnishing" of metals. Am. Compl. ¶ 5, ¶ 54. In addition to the "malodorous smell" of "rotten eggs," the excessive elements have also caused "respiratory problems, sinus problems, eye problems, and nosebleeds." Id. ¶ 5. The presence of the excessive amounts of sulfur and strontium obviously irritates and contaminates. It causes "pitting and/or tarnishing." In other words, their presence corrupts the metals. Foster's description of bodily injuries, "respiratory problems, sinus problems, [and] eye problems," though vague, cannot escape the inference that the elements caused irritation or inflammation. Simply because the Amended Complaint did not use the

specific words in the policy or relevant definitions does not change the analysis–using synonyms and broad terms will not circumvent the plain meaning of the language. See, e.g., Nova Cas. Co., 424 F. Supp. 2d at 1333 ("plain language of the policy will be given the meaning it clearly expresses").

Furthermore, Foster errs in asserting that the excessive sulfur and strontium have "no particular effect commonly thought of as an irritant or contaminate." Foster Resp. in Opp., at 13. In Nova Casualty, the Court stated that "where the contract defines 'pollutant' as an 'irritant or contaminate,' the court should look to see if the disputed substance is alleged to have any particular effect commonly thought of as 'irritations' or 'contamination.'" 424 F. Supp. 2d at 1334. Foster argues that gypsum does not, under normal circumstances, have particular effects. Foster ignores the fact that the disputed substance is not regular gypsum. The gypsum here is defective and its components obviously cause irritations and contamination–Foster pled these particular effects in her Amended Complaint.

Foster also jumps to the conclusion that because Florida Statute § 403.703(6) deems gypsum "non-hazardous in nature," then its components–sulfur and strontium–must not be pollutants. This reasoning is flawed for two reasons. First, the term "hazardous" does not appear in the policies' definition of "pollutant," nor does it appear in the dictionary definitions of "irritant" or "contaminant." "Hazardous" is not a necessary attribute of a "pollutant" as defined in the policies. Second, the gypsum used in the defective drywall clearly differs from the gypsum contemplated by the statute. Under normal circumstances, gypsum does not cause bodily injury or property damage. There is an obvious difference between commonly used gypsum and the

defective gypsum at issue that has allegedly caused bodily injury and severe property damage.[6]

Northstar Defendants claim that the purpose of such exclusions are solely for coverage of damage or injury caused by environmental or industrial pollution, and the Pollution Exclusion is therefore ambiguous. In support of this contention, they cite a case applying Massachusetts law, a case applying Texas law, and remarks from a public hearing. Northstar Resp. in Opp., (ECF No. 67) at 10-12. The Florida Supreme Court has specifically held that these kinds of exclusions when stated unambiguously do not only apply to environmental and industrial pollution. Deni, 711 So. 2d at 1138 (finding similar pollution exclusion unambiguous in ammonia spill). There is nothing ambiguous about the exclusion here. Moreover, a Federal Court sitting in diversity should not act to create or expand states public policy and the Court will not do so here. St. Paul Fire & Marine Ins. Co. v. Jacobsen, 48 F.3d 778, 783 (4th Cir. 1995).

Thus, the injuries and damage sustained from the drywall are withing the policies' Pollution Exclusion. General Fidelity has no duty to defend or indemnify. Accordingly, summary judgment is warranted.

## IV.   CONCLUSION

In light of the foregoing, it is

ORDERED AND ADJUDGED that Plaintiff General Fidelity's Motion for Summary Judgment (ECF No. 37) is GRANTED. It is further

---

[6] It also makes no difference that the defective gypsum was "naturally" mined. Specifically under Florida law, natural substances can still be pollutants when they satisfy the definition in an insurance policy. See e.g., Deni Asscs. of Fla., Inc. v. State Farm Cas. Ins. Co., 711 So. 2d 1135 (Fla. 1998) (holding ammonia was a pollutant under policy pollution exclusion; see also Nova Cas. Co., 424 F. Supp. 2d 1325 ("pollutants" included bacteria and indoor allergens).

ORDERED AND ADJUDGED that Defendant Northstars' Counterclaim for declaratory relief is DISMISSED. The Clerk of the Court is instructed to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this _24th_ day of March, 2011.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   Counsel of record